**E-Filed 9/30/2009**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

CRIS JAO BRETANA

Plaintiff,

v.

INTERNATIONAL COLLECTION CORPORATION, a California corporation; CHARLES D. HENDRICKSON, individually and in his official capacity; LUIGI S. ROSSI A/K/A LUIGI CIOPPA, individually and in his official capacity; and FRANKLIN JAY LOVE, individually and in his official capacity,

Defendant.

Case Number 07-05934 JF (HRL)

ORDER[1] GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Cris Jao Bretana ("Plaintiff") moves for summary judgment on his claims against Defendants International Collection Corporation ("ICC"), its owner/director Charles Hendrickson ("Hendrickson"), and its attorney Franklin Love ("Love") (collectively "Defendants"). Defendants have filed a cross-motion for summary judgment. The Court heard oral argument on September 4, 2009. For the reasons set forth below, Plaintiff's motion will be

[1] This disposition is not designated for publication in the official reports.

granted and Defendants' motion will be denied.

**I. BACKGROUND**

On or about October 17, 2006, Plaintiff incurred a financial obligation in the form of a casino marker[2] in the amount of $1,500.00 issued by Plaintiff to Harrah's Casino in Reno, Nevada. Second Amended Complaint ¶ 13. Sometime thereafter, a photocopy of the casino marker was sent to Defendants for collection. *Id*. at ¶ 15.

On December 1, 2006, Defendants sent an initial collection letter to Plaintiff seeking recovery of an unpaid debt of $1,500.00 in principal, $25.00 in returned check fees, and $168.49 in accrued interest, for a total amount of $1,693.49. *Id*. at ¶ 20 and Exhibit 1. This letter, which was signed by "L. Cioppa, Debt Collector," stated as follows:

> Our attorneys have advised us that under California law 1719 Civil Code, states that unless cash or certified funds in the amount of your NSF check(s) plus the cost of $25.00 for each returned item is received by us in 30 days from the date of this letter, we are entitled to recover for our client, the amount of the check(s), plus treble damages up to $1500.00 for each bad check. If suit is filed, you will also be responsible for interest, court costs, and service for process fees. The court may also award us attorney fees.

*Id*. at ¶ 21.

On December 28, 2006, Defendants sent a second letter to Plaintiff indicating that Plaintiff owed $1,500.00 in principal and $179.58 in interest, for a total amount of $1,679.58. *Id*. at ¶ 25 and Exhibit 2. This letter, which also was signed "Luigi Cioppa, Debt Collector," stated:

> WE WOULD LIKE TO REMIND YOU THAT THIS DEROGATORY INFORMATION COULD STAY ON YOUR CREDIT REPORT FOR SEVERAL YEARS.

¶ ¶ 27, 29.

On January 9, 2007, Defendants sent a third letter to Plaintiff indicating that Plaintiff owed $1,500.00 in principal, $1,500.00 in treble damages, and $184.51 in interest for a total amount of $3,184.51. *Id*. at ¶ 33 and Exhibit 3. This letter also was signed by "Luigi Cioppa,

---

[2] A casino marker is a type of check, drawn on the customer's bank account designated in the instrument. *Nguyen v. Nevada,* 116 Nev. 1171, 1175 (2000).

Debt Collector" and stated:

> BEFORE COMMENCING A LAWSUIT THROUGH THE OFFICES OF FRANKLIN LOVE, I AM OFFERING YOU THIS FINAL OPPORTUNITY TO PAY THIS ACCOUNT IN FULL OR TO MAKE SATISFACTORY PAYMENT ARRANGEMENTS.
>
> IF PAYMENT OR SATISFACTORY ARRANGEMENTS ARE NOT MADE WITHIN 10 DAYS HEREOF, I HAVE BEEN INSTRUCTED TO CONSIDER FILING A LAWSUIT THROUGH OUR LAWYER AGAINST YOU. SHOULD A LAWSUIT BE INITIATED, YOU COULD BE HELD TO PAY NOT ONLY THE PRINCIPAL SUM, BUT ALSO INTEREST, ATTORNEY FEES WHERE APPLICABLE AND COSTS OF SUIT. MR. LOVE HAS STATED THAT SHOULD A LAWSUIT BE FILED A JUDGMENT COULD BE ISSUED, WHICH COULD HAVE THE CONSEQUENCE OF SUBJECTING CERTAIN OF YOUR ASSETS TO GARNISHMENT OR SEIZURE. IN ADDITION, THIS ENTIRE MATTER COULD HAVE A NEGATIVE IMPACT ON YOUR CREDIT RATING.

*Id*. at ¶ 35 and Exhibit 3.

On or about May 14, 2007, Defendants filed suit against Plaintiff in the Sacramento Superior Court, *International Collection Corporation v. Cris Bretana, et al.*, Case No. 07-AM-04820 (hereinafter "the state court complaint"), seeking to collect "$1,500.00 together with interest thereon at the rate of 10 per cent per annum from June 6, 2006," "attorney fees of $180.00" and "treble damages of $1,500.00." *Id*. at ¶ 38 and Exhibit 4. The complaint was signed by Love. *Id*. at ¶ 40 and Exhibit 4. The verification was signed by Hendrickson. *Id*. at ¶ 41 and Exhibit 4.

On November 26, 2007, Plaintiff filed the instant action. On February 14, 2009, Plaintiff filed a First Amended Complaint ("FAC"). On June 2, 2008, this Court denied Defendants' motion to dismiss the FAC, and Defendants filed their Answer on June 9, 2008. On July 2, 2009, Plaintiff filed the operative Second Amended Complaint ("SAC"). On July 31, 2009, the parties filed the instant cross-motions for summary judgment.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id*.

The standard applied to a motion seeking partial summary judgment is identical to the standard applied to a motion seeking summary judgment of the entire case. *Urantia Foundation v. Maaherra*, 895 F.Supp. 1335, 1335 (D. Ariz. 1995).

**III. DISCUSSION**

Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, in order to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (quoting S.Rep. No. 382, 95th Cong.2d Sess. 4, reprinted in 1977 U.S. Code Cong. & Admin.News 1695, 1699). In the Ninth Circuit, "whether the initial communication violates the FDCPA depends on whether it is likely

to deceive or mislead a hypothetical least sophisticated debtor." *Terran v. Kaplan*, 109 F.3d 1428, 1431-32 (9th Cir. 1997) (internal quotation marks and citations omitted). Under this standard, a court must consider whether "the least sophisticated debtor would likely be misled by the notice." *Swanson*, 869 F.2d at 1225.

**A. Hendrickson is a Debt Collector as Defined Under the FDCPA**

"The inquiry as to whether a person is a debt collector is not case specific, but rather depends on whether that person 'regularly' collects debts - in other words a person cannot be considered a debt collector with regard to one debtor and not a debt collector with regard to another debtor." *Schutz v. Arrow Financial Services*, 465 F. Supp. 2d 872, 875 (N.D. Ill. 2006). "[A] person may regularly render debt collection services, even if these services are not a principal purpose of his business. Indeed, if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity; the person still renders them 'regularly.'" *Garrett v. Derbes,* 130 F.3d 317, 318 (5th Cir. 1997), citing, *Stojanovski v. Strobl & Manoogian, P.C.*, 783 F. Supp. 319, 322 (E.D. Mich. 1992).

Hendrickson testified at his deposition that he created ICC in October 1985, and is the company's sole owner, officer and director. It is undisputed that ICC's only business is debt collection, and that ICC has been Hendrickson's exclusive employment since January 1986. Hendrickson Deposition at 20:4-17. Hendrickson is in charge of marketing, paralegal duties, referrals and obtaining new clients. He handles incoming and outgoing collection calls, sending out collection letters, following up on accounts with monthly agreements, and other activities. *Id.* at 21:15-21, 22:23 to 23:5, 27:2-9. These activities are sufficient to render him a debt collector for purposes of the FDCPA. Even when Hendrickson is engaging in marketing for ICC, he is performing debt collection activities under the FDCPA. "It seems highly unlikely that [ICC] could have maintained a collection business without [Hendrickson's] services" in obtaining collection accounts. *See West v. Costen*, 558 F. Supp. 564, 584 (W.D. Va. 1983) (finding president of a collection agency a "debt collector" within the meaning of the FDCPA

despite the fact that he did not personally engage in collections, when his job was to obtain new accounts from merchants and retailers).

**B. Love Ratified the Actions of His Co-defendants**

Defendants admit that Love allowed ICC "the use of his name being referred to in a letter sent out by ICC" while being on retainer. Opp. at 9:11-13. Love corroborates this admission in his deposition testimony. "Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him." *Estate of Stephens,* 28 Cal.4th 665, 673 (2002), citing, *Rakestraw v. Rodrigues,* 8 Cal. 3d 67, 73 (1972). By approving the form of the letters, and allowing his name and status as an attorney to be used in them, Love ratified the letters. As a result, Love is responsible for any violations of the FDCPA stemming from the collection letters that used his name.

**C. Nevada Law Applies**

Because the debt that is the subject of this action was incurred at Harrah's Casino in Reno, Nevada, that state's laws apply. Defendants argue that the Plaintiff's debt did not actually come into existence until the Casino attempted to cash his check at a California bank. The Defendants suggest that since the check bounced in California, the debt was incurred in California rather than in Nevada. Defendants offer no authority for this construction of the FDCPA. Common sense dictates that the debt was incurred when Plaintiff signed the casino marker for $1,500.00 and took the cash. At that point he was obligated to repay the debt. *See Nguyen,* 116 Nev. 1171 (2000) (applying Nevada dishonored check laws to casino markers executed in Nevada by a Texas resident).

**D. Defendants Violated the FDCPA**

Applicable Nevada law does not allow for the collection of interest and legal fees. Consequently, the representations in the collection letters that Plaintiff was liable for interest and fees violated the FDCPA.

**E. *Imperial Merchant Services v. Hunt* Does Not Apply**

Defendants argue that the August 10, 2009 decision *Imperial Merchant Services v. Hunt*, 47 Cal.4th 381 (2009), holding that a debt collector may not recover both a service fee under California Civil Code § 1719 *and* prejudgment interest, may not be applied "retroactively." As discussed above, Nevada law applies to Plaintiff's claims; the applicability of *Hunt* is therefore immaterial.

**F. Bona Fide Error Defense**

Defendants assert the FDCPA's bona fide error defense, which provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error *notwithstanding the maintenance of procedures reasonably adapted to avoid any such error*.

15 U.S.C. § 1692k(c).

The relevant question is whether Defendants maintained "procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Hendrickson and Love have failed to present evidence from which a reasonable trier of fact could find that they maintained such procedures. Love's declaration, along with his deposition testimony, shows that he does not maintain reasonable procedures adapted to avoid filing lawsuits in the correct county, or additionally, separate preventative mechanisms for catching errors. Love testified that he does not check the address on the lawsuit request form against any independent sources. Love Deposition at 36:22 to 37:14.

Hendrickson owns and runs ICC, the principal purpose of which is the collection of debts. He regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. He is extensively involved in ICC's business operations and thus uniquely positioned to maintain systems and procedures designed to prevent errors during debt collection. ICC did not maintain procedures to avoid the type of errors that occurred in this case. The bona fide error defense is thus not available to Defendants.

**G. The FDCPA is a Strict Liability Statute**

Defendants argue that it would be unfair to allow Plaintiff to pass a bad check and then recover for the manner in which Defendants sought to make good Plaintiffs debt. Defendants cite California law for the proposition that "no one can take advantage of his own wrong." *See* Cal. Civ. Code § 3517. As is discussed above, California law does not apply. Moreover, the FDCPA protects consumers regardless of whether they owe money to a creditor. Plaintiff is not seeking a release of the debt or judgment; he merely requests that the Court enforce his rights under the FDCPA. Plaintiff has demonstrated as a matter of law that Defendants violated the FDCPA, and Defendants have failed to raise a triable issue of material fact as to any defense available to them.

**IV. ORDER**

Good cause therefore appearing, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is GRANTED, and Defendants' motion for cross-summary judgment is DENIED.

DATED: September 29, 2009

JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

Fred W. Schwinn fred.schwinn@sjconsumerlaw.com, cand_cmecf@sjconsumerlaw.com, fschwinn@gmail.com

Larry Rothman tocollect@aol.com

O. Randolph Bragg rand@horwitzlaw.com, shannon@horwitzlaw.com